JN:JDL/KKO
F. #2014R00725

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

 

UNITED STATES OF AMERICA

- against -

DORIS HENRIETTE YEMBE,
    also known as "Doris Henriette Yembe
Pereira," "Doris Y. Pereira," and
"Henriette D'Antonio,"

                         Defendant.

- - - - - - - - - - - - - -X

C O M P L A I N T

(18 U.S.C. § 1343)

EASTERN DISTRICT OF NEW YORK, SS:

        Brian Colica, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

        In or about and between April 2013 and April 2014, within the Eastern District of New York and elsewhere, the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," together with others, having devised a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, did knowingly and intentionally transmit and cause to be transmitted writings, signs, signals, pictures and sounds by means of wire communication in interstate and foreign commerce for the purpose of executing said scheme and artifice.

        (Title 18, United States Code, Section 1343)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been involved in numerous fraud investigations. Through my training, education and experience, I have become familiar with (a) the manner in which frauds are committed; (b) the methods used by persons committing fraud to launder the proceeds of their criminal activities; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including bank records; and from reports of other law enforcement officers involved in the investigation.

## THE FRAUDULENT SCHEME

2. Between approximately April 2013 and the present day, the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," together with others, executed a fraudulent scheme through the following companies: Wall Street Investing Group ("WSIG"), Pereira and Wall Street Investing Group, and Trinity International Investments ("Trinity").

3. Generally speaking, the scheme worked as follows. Individuals or companies (the "victim borrowers") interested in obtaining financing would come into contact with the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

Pereira", "Doris Y. Pereira," and "Henriette D'Antonio," who held herself out as an executive of entities that purportedly were in the business of arranging commercial financing. YEMBE would agree to arrange financing for the victim-borrowers, but YEMBE would inform the victim-borrowers that, in order to secure financing, the victim-borrowers would need to provide YEMBE with roughly one percent of the value of the financing. YEMBE told the victim-borrowers that she needed the funds to purchase a surety bond that would be issued in connection with the victim-borrowers' financing. In reliance on YEMBE's representations, the victim-borrowers would wire funds to accounts designated by YEMBE. YEMBE received funds from victim-borrowers; however, she would not purchase a true surety bond or provide the victim-borrowers with financing. On occasion, YEMBE would provide victim-borrowers with a forged copy of the surety bond. When the victim-borrowers would inquire about the status of their financing or complain about the delay in the financing process, YEMBE would string the victim-borrowers along by providing them with excuses as to why their financing had been delayed. Instead of using the victim-borrowers' money as promised, YEMBE misappropriated the funds the victim-borrowers had given her by transferring the funds to other accounts and using the funds to pay for personal expenses, luxury cars and a cooperative apartment. Through this scheme, YEMBE has received more than $1 million. Identified below are particular examples of YEMBE's fraudulent conduct in connection with the victim-borrowers.

I.  VICTIM #1

    4.    In or about May 2013, Victim #1 came into contact with WSIG. Victim #1 spoke on the telephone to the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," who held

herself out as the "president" of WSIG. YEMBE told Victim #1 that WSIG would provide financing and that the funds would be coming from investors in Dubai, United Arab Emirates. YEMBE further told Victim #1 that, as a condition of the financing, Victim #1 needed to provide one percent of the value of the financing – $10,000 – to YEMBE so that WSIG could purchase a surety bond from Barclays bank.

5. On or about May 30, 2013, Victim #1 sent approximately $10,050 by wire transfer to a Bank of America account ending in 4525, located in Holbrook, New York, and maintained in the name of "DBA Pereira & Wall Street Investing Group, Doris Henriette Yembe Sole Prop" (the "BOA 4525 Account"). On or about June 4, 2013, the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," then sent by e-mail to Victim #1 a document that purported to be a "Surety Insurance Bond" issued by "BARCLAYS CORPORATE BANKING, LONDON."

6. The defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," eventually communicated to Victim #1 that YEMBE was unable to release the funds for the financing until she met a "quota" of financing placed. YEMBE asked Victim #1 to increase the amount of the financing by an additional $4 million, for a total of $5 million, so that she could meet the quota. Victim #1 agreed and, on or about July 29, 2013, sent approximately $40,000 by wire transfer to the BOA 4525 Account.

7. The defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," did not provide the financing, and Victim #1 began to complain. Eventually, after repeated complaints by Victim

#1, YEMBE sent two separate wire transfers of $10,000 to Victim #1. YEMBE did not, however, provide the financing. Victim #1 then demanded that YEMBE return the remaining $30,000 that Victim #1 had sent to her, but YEMBE never returned the $30,000.

8. Agents have been in contact with representatives of Barclays bank. Barclays bank has confirmed that the $10,000 "Surety Insurance Bond" is not an authentic bond issued by Barclays Bank and that it does not have a business relationship with either YEMBE or WSIG.

II. VICTIMS #2 AND #3

9. In or about June 2013, Victims #2 and #3 came into contact with WSIG. In or about July 2013, Victims #2 and #3 traveled to New York to meet with the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," who held herself out as "Doris Y. Pereira." Victims #2 and #3 met with YEMBE in Manhattan, New York. At the meeting, YEMBE represented that she could obtain $113 million in financing for Victims #2 and #3 through her company, WSIG, if Victims #2 and #3 paid roughly one percent of the value of the financing, which she said would be used to purchase a surety bond. Victims #2 and #3 executed an agreement with WSIG which provided that WSIG would arrange $113 million in financing after it received $1,060,000 from Victims #2 and #3.

10. On or about July 30, 2013, Victim #2 wired $775,000 to the BOA 4525 Account, and on or about July 31, 2013, a company controlled by Victims #2 and #3 wired $284,975 to the BOA 4525 Account.

11. The defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," then began to stall

Victims #2 and #3, when they began to question YEMBE about the status of the financing. YEMBE repeatedly promised them that the funds would materialize. As recently as March 2014, on a conference call, YEMBE assured Victims #2 and #3 that they would receive the funds. To date, YEMBE has not provided any of the funds and continues to keep VICTIMS #2 and #3 at bay. Instead of using the advance payment for a surety bond to secure financing, YEMBE misappropriated the funds within days through transfers to another account under YEMBE's control and the purchase of a luxury items, including a Porsche and a cooperative apartment.

    A.    <u>Purchase of a Porsche Boxster</u>

    12.    On or about July 31, 2013, the same date that Victims #2 and #3 completed their payment for the surety bond, $5,000 was withdrawn from the BOA 4525 Account and used to purchase a cashier's check made payable to Porsche of Huntington from remitter "Pereira & Wall Street Investing Group." This cashier's check was used as partial payment for a Porsche Boxster sports car.

    13.    On or about August 2, 2013, $82,000 was transferred from the BOA 4525 Account to another Bank of America account, ending in #4567, held in the name of "DBA Pereira & Wall Street Investing Group, Doris Henriette Yembe Sole Prop." (the "BOA 4567 Account").

    14.    On or about August 12, 2013, $82,153.73 was withdrawn from the BOA 4567 Account and used to purchase a cashier's check made payable to Porsche of Huntington.

    15.    A Porsche of Huntington purchase order form dated July 31, 2013, shows that the Porsche Boxster's total cost was $87,153.73, and that the purchaser was Pereira & Wall Street Investing Group.

16. Agents have examined the Facebook page of defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," which contains a photograph of YEMBE posing next to a Porsche Boxster. Agents have compared the photograph of YEMBE from her Facebook page with a photograph from her alien file and have confirmed that they are the same person. Victim #2 independently viewed YEMBE's Facebook page and identified YEMBE.

B.   Purchase of Cooperative Apartment

17. On or about August 9, 2013, the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," transferred $10,000 from the BOA 4525 Account to another Bank of America account, ending in #8525, held in the name of Matthew J. Dantonio and Doris Henriette Yembe (the "BOA 8525 Account").

18. On or about the same date, a cashier's check was issued in Florida with funds withdrawn from the BOA 8525 Account in the amount of $10,000. The cashier's check was made payable to Home Run Real Estate.

19. On or about September 9, 2013, a proprietary lease for a cooperative apartment was entered into between the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," as lessee, and Royal Saxon, Inc., as lessor.

20. On or about September 10, 2013, $65,315 was wired from the BOA 4525 Account to Rabideau Law Real Estate. The wire information referenced "Royal Saxon closing."

21. On or about September 12, 2013, a document titled "Owner's Proprietary Lease Certificate of Incorporation" was recorded in Palm Beach County, Florida. The top left corner of the cover page bears the return address of "Rabideau Law." On the top right corner of the cover page, under the recording date and county name is the amount "$75,000.00."

III.   VICTIM #4

22. At some point after receiving the wire transfers from Victims #2 and #3, WSIG's webpage was taken down from the Internet. A confidential informant, whose information has been independently corroborated, informed agents that the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," is now doing business under the name Trinity International Investments ("Trinity").

23. Victim #4 posted a message on an investment website seeking financing. In response to the post, the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," identifying herself as "Henriette D'Antonio," indicated that she would be able to provide such financing on behalf of Trinity. YEMBE held herself out variously as a "manager" or "director" of Trinity in communications with Victim #4.

24. On or about February 13, 2014, the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," and Victim #4 entered into a written agreement for Trinity to arrange approximately $5 million in financing to Victim #4. YEMBE further told Victim #4 that, as a condition of the financing, Victim #4 needed to provide one percent of the value of the financing – $50,000 – to Trinity so that Trinity could purchase a surety bond from Barclays

bank. The agreement specified that the $50,000 was to be sent to "Trinity International Investments, Legal Department" and provided a Wells Fargo Bank, NA account held in the name of an attorney (the "Trinity Account"). Bank records show that the Trinity Account is held in the name "Mobile Closings USA PC."

25. On or about February 20, 2014, Victim #4 sent wire transfers totaling $50,000 to the Trinity Account.

26. On or about April 8, 2014, Victim #4 sent an e-mail to "Henriette D'Antonio" at the e-mail address "info@trinityinternationalinvestments.com" that stated, in sum and substance, that Trinity was not living up to its stated time schedule and commitments and accused Trinity of committing fraud. In response, "Henriette D., Director of Finance/Investments Manager" sent an e-mail to Victim #4 and recipient "m.owen@barclayscorporatebanking.com" stating, among other things, that she had copied "[t]he Banker at Barclays Bank." Barclays bank has confirmed to agents that it does not use the e-mail suffix "@barclayscorporatebanking.com" and that Barclays does not have a business relationship with Trinity.

27. YEMBE and Trinity did not obtain financing for Victim #4, and they did not use the $50,000 advance fee to purchase a surety bond through Barclays bank or any other source. YEMBE and Trinity also did not return the advance fee to Victim #4. Instead, the funds were used to purchase a luxury car and were otherwise substantially dissipated.

A. Purchase of Porsche Cayenne

28. On or about February 24, 2014, four days after receiving $50,000 from Victim #4, $49,000 was transferred from the Trinity Account to a Citibank account, ending in #3581 (the "Citibank Account").

10

29. A Porsche of Huntington purchase order form and attached credit card receipt, both dated March 15, 2014, show that "Doris H. Yembe" ordered a Porsche Cayenne sport utility vehicle and made a deposit of $2,000 by credit card. The purchase order form lists YEMBE's telephone number as (631) 672-5058, the same number Victim #4 used to communicate with YEMBE.

30. On or about March 19, 2014, $70,000 was transferred from the Trinity Account to the Citibank Account.

31. On or about April 9, 2014, $69,269.68 was withdrawn from the Citibank Account and used to purchase a cashier's check made payable to Porsche of Huntington from remitter "Doris H. Yembe."

32. A Porsche of Huntington vehicle invoice dated April 9, 2014, shows that "Doris Henriette Yembe" purchased a Porsche Cayenne. On this document, the total invoice price, less the $2,000 deposit and cash on delivery that covered optional equipment and accessories, was $69,269.68, the same amount as the cashier's check. The total invoice price for the Porsche Cayenne was $71,269.68.

33. On or about April 9, 2014, agents observed the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," pick up a Porsche Cayenne from Porsche of Huntington.

WHEREFORE, your deponent respectfully requests that the defendant DORIS HENRIETTE YEMBE, also known as "Doris Henriette Yembe Pereira," "Doris Y. Pereira," and "Henriette D'Antonio," be dealt with according to law.

*[signature]*
Brian Colica
Special Agent, United States Department of Homeland Security, Homeland Security Investigations

Sworn to before me this
28th day of April, 2014

*[signature]* S| Levy
THE HONOR.
UNITED STA'
EASTERN DIS